Robert H. BURGE and Darold W.
Jenkins, Appellants,

v.

Sanford M. COHEN and Reed
Stenhouse, Inc., Respondents.

No. WD 36480.

Missouri Court of Appeals,
Western District.

Dec. 3, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Jan. 28, 1986.

Application to Transfer Denied
March 25, 1986.

Arthur A. Benson, II, Kansas City, for appellants.

Albert W. Thomson, Jeffrey D. Fridkin, Kansas City, for respondents.

Before CLARK, C.J., and KENNEDY and BERREY, JJ.

KENNEDY, Judge.

The trial court at the close of plaintiff's evidence directed a verdict against the plaintiff, who was claiming damages from defendants for their conversion of a certain draft of which he was co-payee. Defendants were an insurance broker, Reed Stenhouse, and its manager, Sanford ("Sandy") Cohen. The draft was for insurance proceeds for a fire loss to a building. It was payable to plaintiff, the fee owner, and to the mortgagee, Ben Schwartz. Plaintiff's name was forged to the draft (the other payee's genuine signature appeared thereon) and defendants and the mortgagee deposited the draft for collection. The proceeds of the draft were paid in part to Mr. Schwartz and in part to Reed Stenhouse.

Defendants claimed the plaintiff was not entitled to any of the proceeds of the draft, and that all the proceeds belonged equitably to the other payee, the mortgagee, hence that plaintiff had no right to possession of the draft which would support his claim for conversion thereof.

From the judgment in pursuance of the directed verdict against him, plaintiff has appealed. We conclude that plaintiff's evidence made a submissible case for conversion against the defendants. We reverse the judgment and remand the case for a new trial.

The facts:

Plaintiff Burge owned a building at 3935–41 Main Street in Kansas City, Missouri. Ben Schwartz (who had died before the trial) had a deed of trust thereon. The building suffered fire damage in the amount of $25,528.73. That figure was the sum charged by Total Interiors, Inc., to repair the building after the fire. The repairs had been discussed with and approved by a claims adjuster for the insurance carrier. Schwartz insisted upon the repair of the building and agreed to the use of the insurance proceeds for that purpose.

Lexington Insurance Company had issued an insurance policy covering the loss. It issued its draft, the draft which is claimed by plaintiff to have been converted,

in the sum of $25,528.73.[1] The draft was sent to its agent, defendant Reed Stenhouse. The draft was payable to "Robert H. Burge and Ben Schwartz".

Reed Stenhouse and Cohen claimed that Burge owed Reed Stenhouse an insurance premium of approximately $6,000 on another policy and demanded that Burge endorse the draft so that the proceeds could be applied to that premium. Burge denied owing the premium and refused Cohen's demand that he endorse the draft. His plea was that Total Interiors was entitled to the money. He requested that he be allowed to endorse the draft over to Total Interiors, but Cohen would not permit this. (There is no claim in this case that Burge actually owed the premium for which Reed Stenhouse was demanding payment from him, least of all that Reed Stenhouse had any legal or equitable claim on the draft for its payment.) Later, Mr. Cohen showed up with Mr. Schwartz at a bank where Mr. Cohen was a favored customer, draft in hand. The draft had Burge's name endorsed on it and Schwartz's name. After collection, the proceeds were paid out in two money orders, one to Reed Stenhouse for $5,528.73, and one to Schwartz for $20,000.

Total Interiors received $10,000 from Schwartz and brought suit against Burge for the balance of $15,528.73. Burge joined Schwartz's estate as a party to the Total Interiors lawsuit and collected an additional $10,000 from Schwartz's estate to apply on the Total Interiors claim. Total Interiors then took judgment against Burge for the balance of its claim. That balance was $9,350.67, including interest that had accrued. Burge then in the present lawsuit got judgment for $5,500 against Rosedale Bank which had collected the insurance draft on the forged endorsement and had paid the proceeds to Schwartz and to Reed Stenhouse. This made him whole except for $28.73 and interest, which he now claims from defendants Reed Stenhouse and Cohen as damages for the conversion, along with punitive damages.

Defendants for its defense to the conversion claim say it was Schwartz, not plaintiff, who was entitled to the proceeds of the draft. They base their argument upon the loss payable provision of the insurance policy. That provision was: "Loss or damage, if any, under this policy shall be payable to Ben Schwartz ... mortgagee ..., as interest may appear ..."; and upon the provision in the deed of trust that gave to the mortgagee the "power to demand, receive and collect any and all moneys becoming payable (under the policy) and the same to apply toward the paying of said note, unless otherwise paid...."

█ The shortest answer to defendants' contention is found in the fact that Burge was a named payee of the draft. This alone gave him sufficient property in it to constitute defendants' appropriation of it a conversion, even though it might be shown that plaintiff was not entitled to the *proceeds* of the draft. *Brede Decorating, Inc. v. Jefferson Bank & Trust Co.*, 345 S.W.2d 156, 164 (Mo.1961); *Aetna Casualty & Surety Co. v. Lindell Trust Co.*, 348 S.W.2d 558, 562–63 (Mo.App.1961).

Defendants next argue that Burge *authorized* Schwartz to sign the draft for him. (There is no evidence at all that it was Schwartz who signed Burge's name to the draft; the evidence shows only that the name was not signed by Burge. Furthermore, there is no indication that Burge's name purported to be signed by another with Burge's authority.) Defendants say that Schwartz's authority came from the above quoted "loss payable" clause in the insurance policy and from the quoted provision of the deed of trust.

█ Here again defendants confuse the draft itself with the proceeds of the draft or with the claim for which the draft

---

1. The first draft was dated 1–19–79. It was payable to plaintiff and his wife and Schwartz. A second draft was requested by defendants, payable to Schwartz only, or, if Burge's name had to be included, then omitting the name of his wife. This brought to them the draft claimed to have been converted, dated May 31, 1979.

was given. But, to go a bit further, and treating the draft for argument's sake as being the equivalent of the proceeds thereof or the equivalent of the claim for which it was given, it is to be noted that the insurance proceeds were payable to Schwartz only "as his interest (might) appear". According to the testimony of Burge (which we take as true for the purpose of testing whether a submissible case was made out) the "loss payable" provision of the policy had been modified by agreement of Burge and Schwartz, the modification being that the insurance proceeds be used for the repair of the building. Such a modification is, of course, allowable and is to be recognized. *Hoosier Plastics v. Westfield Savings & Loan Ass'n,* 433 N.E.2d 24, 27 (Ind.Ct.App.1982); *Law v. Dewoskin,* 223 Tenn. 453, 447 S.W.2d 361, 363 (1969); *Winneshiek Mutual Insurance Ass'n v. Roach,* 257 Iowa 354, 132 N.W.2d 436, 443 (1965); 59 C.J.S. *Mortgages* § 328d(2) (1949). Schwartz's "interest" therefore did not entitle him to the proceeds of the draft to apply upon the indebtedness secured by the deed of trust. Burge was entitled to it for use in paying for the repairs for which he had contracted.

■ At this point, we need to rule upon a point of evidence. The court excluded Burge's testimony of the agreement between himself and Schwartz to use the insurance proceeds to repair the building. The ground for the exclusion was that Schwartz was dead and the Dead Man's statute, § 491.010, RSMo Supp. 1984[2] barred Burge's testimony. We have the evidence before us in the form of an offer of proof. The court should not have excluded the evidence. The transaction between Burge and Schwartz was only collaterally involved in this lawsuit. It was not the agreement between Burge and Schwartz which was the "contract or cause of action *in issue*". Defendants were not parties to the agreement between Burge and Schwartz, nor are they in privity with Schwartz. The "cause of action ... *in*

*issue*" is the alleged conversion of the draft, and defendants are not protected by the Dead Man's statute against the admission of evidence of the Burge-Schwartz agreement. *Grimm v. Gargis,* 303 S.W.2d 43, 51 (Mo.1957); *Freeman v. Berberich,* 332 Mo. 831, 60 S.W.2d 393, 401 (1933); *Dolan v. Kehr,* 9 Mo.App. 351 (1880); 81 Am.Jur.2d *Witnesses* § 390 (1976); 97 C.J.S. *Witnesses* § 204 (1957).

■ Next defendants say that Burge, as an incident to a later settlement of disputes with Schwartz, "ratified" the payment of the insurance proceeds to Schwartz. The evidence does not support this argument. But if it did support such a position, there is no evidence at all, and defendants do not claim, that the payment of the $5,000 to *defendants* was ratified. It was in fact resisted at every point.

It is clear to us that plaintiff made a submissible case of conversion against the defendants. The judgment is therefore reversed and the case is remanded for a new trial.

All concur.

---

**2.** Amended effective Sept. 28, 1985, Act of July 30, 1985, ch. 491, § 491.010, 1985 Mo.Legis.Serv.

260, 317 (West) (to be codified at RSMo § 491.-010).