PANICH v IRON WOOD PRODUCTS CORPORATION

Docket No. 113894. Submitted May 2, 1989, at Grand Rapids. Decided August 7, 1989. Leave to appeal applied for.

Plaintiff, Thomas Panich, an employee of defendant, Iron Wood Products Corporation, was injured at work when an electrical box on a machine exploded. Plaintiff was off work for six to seven months and did not learn that defendant had disposed of the remains of the electrical box at a local landfill until he returned to work. Plaintiff then brought an action in the Gogebic Circuit Court alleging negligence and interference with an economic advantage. The undisputed facts indicate that plaintiff never requested that defendant save the electrical box, defendant never assumed an obligation to preserve the damaged box, and plaintiff did not advise defendant of his intention to file a third-party action against the manufacturer of the box until after it had been discarded. The trial court, William G. Cloon, Jr., J., granted defendant's motion for summary disposition, finding that defendant had no duty to preserve potential evidence for plaintiff's benefit. Plaintiff appealed.

The Court of Appeals *held:*

1. The common law and the Workers' Disability Compensation Act do not impose an affirmative duty on an employer to preserve evidence which might be used in an employee's third-party liability action.

2. The trial court correctly dismissed plaintiff's claim alleging intentional interference with an economic advantage. The Court of Appeals, under the facts of the instant case, declined to create in Michigan the tort of intentional interference with a prospective action by spoliation of evidence.

Affirmed.

MURPHY, P.J., concurred with the majority that the facts of this case do not establish that defendant intentionally destroyed evidence necessary for plaintiff's potential third-party cause of action. He dissented, however, from the holding that

REFERENCES

Am Jur 2d, Evidence § 276; Interference §§ 1 *et seq.*

See the Index to Annotations under Economic Relations; Interference and Obstruction.

there is no common-law duty owed by an employer to preserve evidence for an employee's potential third-party action. He believes that the standard of care which defendant owed plaintiff was, at a minimum, to ask plaintiff if he wanted the electrical box preserved. He would affirm the dismissal of plaintiff's claim that defendant intentionally destroyed evidence necessary for plaintiff's third-party tort action but reverse the order of summary disposition relative to plaintiff's negligence claim and remand for further proceedings.

1. NEGLIGENCE — DUTY — PRESERVATION OF EVIDENCE — THIRD-PARTY ACTIONS.

    Neither the common law nor the Workers' Disability Compensation Act impose an affirmative duty on an employer to preserve evidence which might be used in an injured employee's third-party liability action.

2. TORTS — INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE — EVIDENCE.

    Michigan has not recognized the tort of intentional interference with an economic advantage based on a claim of intentional interference with a prospective civil action by spoliation of evidence.

*Wisti & Jaaskelainen, P.C.* (by *Mark Andrew Wisti*), for plaintiff.

*Geissler & Dean, P.C.* (by *Timothy M. Dean*), for defendant.

Before: MURPHY, P.J., and MACKENZIE and GRIFFIN, JJ.

GRIFFIN, J. Plaintiff appeals as of right from a lower court judgment granting defendant's motion for summary disposition as to plaintiff's claim that defendant wrongfully destroyed evidence necessary for plaintiff's third-party tort action. We affirm.

I

On April 22, 1980, an electrical box on a lathe machine at defendant's plant exploded causing

personal injuries to plaintiff, Thomas Panich. At the time of the accident, Panich was employed in defendant's maintenance department and was attempting to reset the box. As a result of his injuries, plaintiff was off work for six to seven months. When he returned, the plaintiff learned that during his absence the defendant had disposed of the remains of the electrical box at a local landfill.

Plaintiff filed the instant action against defendant, Iron Wood Products Corporation, on January 18, 1982, alleging negligence and interference with an economic advantage. Plaintiff asserted in his complaint that his employer intentionally discarded the electrical box after knowing that the plaintiff had a potential third-party claim against the manufacturer of the box. Through discovery, however, the following facts became undisputed: (1) plaintiff never requested the defendant to save the electrical box; and (2) defendant never assumed an obligation to preserve the damaged box. Additionally, there was no evidence that plaintiff advised the defendant of his intention to file a third-party action until after the electrical box had been discarded.

On the basis of this record, the lower court granted defendant's motion for summary disposition under MCR 2.116(C)(10), ruling that the defendant had no duty to preserve potential evidence for the benefit of its employee.

II

On appeal, plaintiff argues that the common law and the Workers' Disability Compensation Act, MCL 418.827, subds (1) and (5); MSA 17.237(827), subds (1) and (5), impose an affirmative duty on an employer to preserve evidence which might be

used in an employee's third-party liability action. We disagree.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it and grant summary disposition if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A party opposing a motion brought under (C)(10) may not rest upon the mere allegations or denials in his or her pleadings, but must by affidavit, deposition, admission, or other documentary evidence set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4).

Plaintiff's complaint sought recovery on two theories: negligence and intentional interference with an economic advantage. Addressing the negligence claim first, we note that the issue of duty is a question of law for the court to decide. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977). The existence of a duty is essentially a question of whether the relationship between the actor and the injured party gives rise to a legal obligation on the actor's part for the benefit of the injured party. *Id.,* pp 438-439. The existence of a legal duty is an essential element of every negligence action. *Duvall v Goldin,* 139 Mich App 342, 347; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985).

The issue before us of whether an employer has a duty to preserve evidence for the benefit of an employee's potential third-party suit is a matter of first impression in Michigan. We therefore turn to other jurisdictions for guidance.

In *Coley v Arnot Ogden Memorial Hospital,* 107 AD2d 67; 485 NYS2d 876 (1985), an employee of

the defendant hospital was standing on a ladder when it collapsed, causing her injuries. The defendant's employees discarded the ladder after the accident, thus precluding the plaintiff from discovering the name of the ladder's manufacturer and effectively negating her third-party products liability claim.

The New York court ruled that the defendant did not owe the plaintiff a duty to preserve the ladder and, thus, the plaintiff had no cause for action. *Id.,* p 69. The court's reasoning was based on the fact that the employer had innocently decided to discard the ladder to ensure the safety of others. *Id.* The court was unable to identify any duty owed and noted that the defendant had not assumed an obligation to preserve the ladder for plaintiff's benefit. *Id.*

Other jurisdictions have ruled consistently in accord. See *Stupka v Peoples Cab Co,* 437 Pa 509; 264 A2d 373 (1970), *Parker v Thyssen Mining Construction, Inc,* 428 So 2d 615 (Ala, 1983), and *Koplin v Rosel Well Perforators, Inc,* 241 Kan 206; 734 P2d 1177 (1987).

We agree with these authorities and likewise hold that there is no common-law duty owed by an employer to preserve evidence for an employee's potential third-party action.

III

Plaintiff also asserts that the WDCA, MCL 418.827 subds (1) and (5); MSA 17.237(827) subds (1) and (5),[1] establishes a statutory duty on employ-

---

[1] MCL 418.827; MSA 17.237(827) states:

(1) Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect

ers to preserve evidence for the benefit of their employees. We disagree.

A cardinal rule of statutory construction is that the words and phrases in a statute are to be given their plain and ordinary meaning. *Van Dam v Grand Rapids Civil Service Bd,* 162 Mich App 135, 138; 412 NW2d 260 (1987). Common sense should be employed when construing a statute. *People v Meadows,* 175 Mich App 355; 437 NW2d 405 (1989).

Plaintiff argues that the WDCA expressly or impliedly imposes a duty upon an employer to preserve evidence for the benefit of its employees' third-party claims. We find no language in the statutory provision supportive of plaintiff's posi-

thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies but the injured employee or his dependents or personal representative may also proceed to enforce the liability of the third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence the action within 1 year after the occurrence of the personal injury, then the employer or carrier, within the period of time for the commencement of actions prescribed by statute, may enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of action by any party under this section, the parties shall notify, by certified mail at their last known address, the bureau, the injured employee, or in the event of his death, his known dependents or personal representative or his known next of kin, his employer and the carrier. Any party in interest shall have a right to join in the action.

* * *

(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

tion and note that plaintiff's strained and expansive construction is not buttressed by any legislative history or case law.

The role of the judiciary is to construe statutes as intended by the Legislature, not to rewrite them. No fair reading of the statute lends support to plaintiff's position that the Legislature intended to impose such a duty on employers. Although it is certainly in the employer's interest to preserve evidence, since an employer's workers' compensation lien will be reimbursed by a third-party recovery, we hold that the statute does not impose such a duty on employers.

IV

The lower court also dismissed plaintiff's claim alleging intentional interference with an economic advantage. Initially, we note that only two jurisdictions have recognized the tort of intentional interference with a prospective civil action by spoliation of evidence: *Smith v Superior Court for the County of Los Angeles,* 151 Cal App 3d 491; 198 Cal Rptr 829 (1984), and *Hazen v Municipality of Anchorage,* 718 P2d 456 (Alas, 1986). These courts stated that the underlying basis of this new tort is the "idea of unreasonable interference with the interests of others." *Smith,* p 496; *Hazen,* pp 463-464. Unlike in the instant case, the defendants in *Smith* and *Hazen* had assumed a duty to preserve evidence. Thus, the liability which arose was from the breach of an assumed duty.

The Kansas Supreme Court in *Koplin v Rosel Well Perforators Inc, supra,* distinguished *Smith* and *Hazen* from the present situation in which the defendant had not assumed a duty. In *Koplin,* the plaintiff was injured while employed by the defendant company when a T-clamp failed due to an

alleged defect. The injured plaintiff sued his employer, alleging that an agent of the defendant had intentionally destroyed the T-clamp immediately after the accident thereby preventing the plaintiff from bringing a third-party action against the manufacturer. The Kansas court initially noted that in both *Smith* and *Hazen* destruction of the evidence was to the direct benefit of the defendants:

> Both *Smith* and *Hazen* are readily distinguishable from the case before us. In *Smith,* Abbott Ford had agreed with Smith's counsel that it would safeguard and preserve the automotive parts for inspection and use by the plaintiff, thereby creating a duty to do so. No such agreement exists in the case at bar. In *Hazen,* the destruction of an allegedly exculpatory tape would presumably make conviction easier for the prosecution. In both cases the evidence was destroyed by the adverse party in pending litigation to the direct benefit of such party. That is not the situation with which we are faced. To the contrary, it would be to the disadvantage of the defendant herein to destroy any evidence because as the employer of plaintiff it would have been subrogated to any recovery Koplin might have obtained to the extent of the workers' compensation payments made to Koplin. [*Koplin, supra* at 212.]

Similarly, in the instant case it was not in the defendant's interest to destroy the remains of the electrical box since the same workers' compensation provision upon which the plaintiff relies grants the employer an economic interest as to third-party tort recoveries.

We hold that the lower court was correct in dismissing plaintiff's claim alleging intentional interference with an economic advantage. Under the facts of the instant case, we decline to create such a tort in Michigan.

Affirmed.

MacKenzie, J., concurred.

Murphy, P.J. *(concurring in part and dissenting in part).* I dissent from the majority's holding that there is no common-law duty owed by an employer to preserve evidence for an employee's potential third-party action. However, I concur with the majority that the facts of this case do not establish that defendant intentionally destroyed evidence necessary for plaintiff's potential third-party cause of action.

I believe it is important to note that there are two separate and distinct torts which are potentially at issue in this case, neither of which has yet to be recognized in Michigan. These torts are (1) the negligent failure to preserve evidence for civil litigation[1] and (2) the intentional interference with a prospective civil action by spoliation of evidence.[2] The fact that these torts have not yet been adopted in Michigan is certainly no bar to the state's jurisprudence's recognizing them.

> A common law duty exists when a court says it does because it thinks it should. By holding that no duty exists because no previous decision has recognized it, a court abdicates its judicial responsibility to a silent past. Holmes said that it was no less than "revolting to have no better reason for a rule of law than that so it was laid down in the

---

[1] The tort of negligent failure to preserve evidence for prospective civil litigation has been recognized at least implicitly. See *Williams v State of California,* 34 Cal 3d 18; 192 Cal Rptr 233; 664 P2d 137 (1983), and *Smith v Superior Court for the Co of Los Angeles,* 151 Cal App 3d 491; 198 Cal Rptr 829 (1984). See also *Petrik v Monarch Printing Corp,* 150 Ill App 3d 248; 103 Ill Dec 774; 501 NE2d 1312 (1986).

[2] Plaintiff frames this intentional tort in his complaint as interference with an economic advantage.

time of Henry IV."[3] It is even more unacceptable to adopt a rule on the ground that no one since Henry IV has held to the contrary.

[3] O. W. Holmes, The Path of the Law, Jurisprudence in Action (1953).

[*Robertson v Deak Perera (Miami), Inc,* 396 So 2d 749, 752 (Fla App, 1981) (Schwartz, J., dissenting).]

Dean Prosser in addressing the evolution of tort law explained:

> New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before . . . . The law of torts is anything but static, and the limits of its development are never set. When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operate as a bar to the remedy. [Prosser, Torts (4th ed), § 1, pp 3-4.]

In this case, plaintiff's complaint alleged that defendant had a duty to preserve the electrical box and that defendant's conduct in discarding the box breached that duty. I agree that defendant, by virtue of being plaintiff's employer, was in a special relationship with plaintiff such that defendant was under some form of obligation to plaintiff relative to preserving the electrical box. Clearly, the question of whether a duty exists is one for the court to decide. *Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977). It is also important to note that the standard of care a defendant owes is not part of the duty question. *Id.,* p 437. Our Supreme Court in *Alfono* explained:

> The elements of an action for negligence are (i)

duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage.

"Duty" comprehends whether the defendant is under *any* obligation to the plaintiff to avoid negligent conduct; it does not include—where there is *an* obligation—the nature of the obligation: the general standard of care and the specific standard of care.

Dean Prosser observed:

> "It is quite possible, and not at all uncommon, to deal with most of the questions which arise in a negligence case in terms of 'duty.' Thus the standard of conduct required of the individual may be expressed by saying that the driver of an automobile approaching an intersection is under a duty to moderate his speed, to keep a proper lookout, or to blow his horn, but that he is not under a duty to take precautions against the unexpected explosion of a manhole cover in the street. But the problems of 'duty' are sufficiently complex without subdividing it in this manner to cover an endless series of details of conduct. *It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other,* and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under *any* obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. *What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.*" Prosser, Torts (4th ed), § 53, p 324 (emphasis supplied).

\* \* \*

In a negligence case, the standard of conduct is reasonable or due care. 2 The Restatement Torts,

2d, § 283, provides: "[T]he standard of conduct to which [the actor] must conform to avoid being negligent is that of a reasonable man under like circumstances." "[I]n negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk." Prosser, Torts, *supra,* § 53, p 324. [*Id.,* pp 437-438, 443.]

From the above quote, it is clear that the relationship between individuals is the touchstone of the duty question. In this case, the relationship between plaintiff and defendant as employee and employer, in my view, is sufficient to give rise to the employer's having some obligation to ask plaintiff if he wanted the evidence preserved. The evidence was under the exclusive control of defendant and, because defendant discarded the electrical box, plaintiff's potential product liability action is baseless.

There is no question that there have been tremendous changes in the law governing the workplace over the last few decades. Employees have numerous rights that never before have existed. Employees may seek redress for wrongful discharge,[3] may demand access to information on the types of dangerous chemicals to which they are exposed at the workplace,[4] and employees have broad protections under the Occupational Safety and Health Act of 1970, 29 USC 651 *et seq.,* and the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.* These are just a few examples of changes in the law benefiting employees in the workplace. I do not believe it improper to impose a duty on employers that would serve to assist an employee in seeking

[3] *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980).

[4] MCL 408.1011 and 408.1061; MSA 17.50(11) and 17.50(61).

redress for an injury which occurred at the work-place.

The record in this case reveals that the electrical box which exploded was replaced almost immediately and apparently was discarded almost as quickly. The majority states that plaintiff never advised defendant of his intention to file a third-party action until after the electrical box had been discarded. My response is that, due to the severity of plaintiff's injuries, I doubt the formulation of a potential third-party cause of action within hours after the incident was plaintiff's paramount concern. It is for this very reason that the burden relative to requesting the preservation of such evidence should not rest with the seriously injured employee, who is more immediately concerned with his physical well being, but, rather, the burden should be with the employer. In fact, I see no reason for the majority to point out that plaintiff never asked defendant to save the box. Under the majority's "no duty" holding, defendant could ignore any such request from plaintiff with impunity. I also believe that the standard of care which defendant owed plaintiff was, at a minimum, to ask plaintiff if he wanted the electrical box preserved.

Moreover, I do not believe that it would unnecessarily burden the employers of this state to be required to meet this minimal standard of care when an employee is seriously injured by some potentially defective product which is under the control of the employer. In any event, it is my view that the duty threshold has been met in this case and a reasonable person's standard of care would dictate that defendant ask plaintiff if he would like the allegedly defective product preserved.

As for plaintiff's intentional tort count, I agree with the majority that the facts of this case do not establish such a cause of action. Simply, the facts here do not show that defendant intentionally interfered with plaintiff's potential civil action. Therefore, I agree with the majority's holding that the lower court was correct in dismissing plaintiff's claim that defendant intentionally destroyed evidence necessary for plaintiff's third-party tort action.

For the foregoing reasons, I would reverse the trial court's order of summary disposition relative to plaintiff's negligence claim and remand the matter for further proceedings.